THOMAS BRODERICK v. DETROIT UNION RAILROAD STATION
& DEPOT COMPANY.

*Negligence—Demurrer—Work outside of hours of labor.*

1. Where not demurred to, a declaration for negligent injury must be held sufficient, after verdict, if it stated a cause of action though it did not specify the negligence, and especially if it counted upon other negligence which it did set forth. So *held* where a workman sued his employer for an injury suffered from the use of defective machinery and did not point out the defect, but also averred as negligence that he had been set at work that was outside the scope of his employment.

2. An employer cannot escape liability for an injury suffered by a laborer while at work for him, on the ground that he was hurt outside of working hours and therefore while not in his employment.

3. A workman who stays upon his employer's premises during the noon recess to eat his dinner is not a trespasser; he has implied permission to stay there, and if called on to resume work before the recess has expired it is his duty to do so. And whatever he does under such circumstances is within the scope of his employment, and to that extent not voluntary.

4. Whatever a workman does under competent authority for the comfort and convenience of his fellow workmen is presumed to be for his employer's benefit, and such work is not so foreign to his employment that he would be justified in refusing to do it. So *held* where a workman was called upon during noon recess to open a ventilator and was severely injured while doing it.

Error to the Superior Court of Detroit.   (Chipman, J.)
January 15.—April 9.

CASE.   Defendant brings error.   Affirmed.

*Isaac Marston* for appellant. In case for negligent injury the matters of negligence to which the injurious consequence referred must be properly averred: *M. H. & O. R. R. v. Marcott* 41 Mich. 435 ; *F. & P. M. R. R. v. Stark* 38 Mich. 714 ; the defect in this case was not formal and does not therefore come within any of the decisions of this Court, touching the method of raising them : *Sutton v. Van Akin* 51 Mich. 465 ; *McDonald v. C. & N. Ry. Co.* 51 Mich. 628 ;

a workman who lingers on his employer's premises out of
working hours is a trespasser: *Gillis v. Penn. R. R. Co.* 59
Penn. St. 129; *Pittsburgh &c. R. R. Co. v. Bingham* 29
Ohio St. 364; *Sweeny v. Old Colony R. R.* 10 Allen 368;
*Severy v. Nickerson* 120 Mass. 306.

*E. H. Sellers* and *Don M. Dickinson* and *W. L. Carpenter* for appellee. A corporation is responsible for injuries
resulting from the negligence of a representative in requiring an inexperienced subordinate to incur risks not in the
course of duty: *Goddard v. G. T. R. R.* 57 Me. 223;
*Coombs v. New Bedford Cordage Co.* 102 Mass. 572; *R. R.
Co. v. Fort* 17 Wallace 558; *Greenleaf v. Ill. Cent. R. R.
Co.* 29 Ia. 14; *Lalor v. C. B. & Q. R. R. Co.* 52 Ill. 401;
*Holden v. Fitchburg R. R.* 129 Mass. 278; as to the sufficiency of the pleading, see *Ware v. Gay* 11 Pick. 106; 3
Chit. Pl. 375; 2 Greenl. Ev. § 210, n. 2; *McCauley v. Davidson* 10 Minn. 418; *Grinde v. Mil. & St. P.* 42 Ia. 376;
*Oldfield v. N. Y. & H. R. R. R.* 14 N. Y. 310; *Nolton v.
Western R. R.* 15 N. Y. 444; *Kessler v. Leeds* 51 Ind. 212;
*Ohio & Miss. R. R. v. Selby* 47 Ind. 471; *Edgerton v. N.
Y. & H. R. R. R.* 35 Barb. 389; *Eldridge v. Long Island
R. R.* 1 Sandf. 88; *Church v. Gilman* 15 Wend. 650; *Lucas
v. Wattles* 49 Mich. 380; *Sutton v. Van Akin* 51 Mich. 463.

CHAMPLIN, J. The defendant is a Michigan corporation,
engaged in the business of elevating grain at the city of
Detroit. Its works are operated by steam power. Its
boiler-room is ventilated by a sheet-iron pipe about
three feet in diameter, placed over the boilers and projecting above the roof. At the time of the injury complained of, the ventilator was constructed with a damper
made of a disk of sheet-iron, placed about twenty feet from
the lower end. This damper was held in place by its own
gravity, having arbors resting upon iron jaws riveted to the
inside of the ventilating tube. There was no device to
prevent the damper from being lifted from its support. A
piece of iron was fastened to one side of the damper transversely to its bearings, to serve as a weight and keep the ventilating flue open at all times. No appliance was attached
to the damper whereby to regulate the discharge of air passing through the ventilator, or to close the same. The weight

of the damper was from thirty-five to forty pounds. Mr. Beals was superintendent of defendant company, and Mr. Savage was foreman in charge at the elevator. Thomas Daugherty was fireman. Plaintiff is a common laborer. About six weeks prior to his being injured, plaintiff applied to Mr. Beals for a job, and he put plaintiff to loading and unloading cars, under the charge of Mr. Savage, and plaintiff continued thus employed for about six weeks. The record does not disclose the time or terms of hiring. During this time Mr. Daugherty came to plaintiff one day and asked him to go to the fire-room and do a little work for him, and he refused. Daugherty then said: "Mr. Savage told me I could get you for a while." To which plaintiff replied: "When Mr. Savage tells me to go, I will go, and not until then." Daugherty then went to Mr. Savage, and Mr. Savage said: "Go and help him." A couple of days after, Daugherty asked plaintiff again to help him, but he refused without Mr. Savage told him to. Daugherty then went to Mr. Savage and came back and said: "Mr. Savage said you were to go." Plaintiff replied: "I won't till he tells me." Mr. Savage then came and said to plaintiff: "You go and help Tom, and when he wants you to do anything do it for him."

On the 23d of January, 1883, the plaintiff was still in the employ of defendant, and during most of the forenoon was working in the boiler-room, taking down some steam-pipes, that ran from the fire-room to the office, which had become frozen, and putting them on top of the boiler to thaw out. Mr. Savage called him from this work to unload a car of barley, after which he told him to go to dinner. This was at half past eleven o'clock in the forenoon. Plaintiff ate his lunch in the forenoon, and after eating he was directed by Daugherty to close the ventilator, and plaintiff told him he would not do it without orders from Mr. Savage. We here quote the testimony of the plaintiff, given on the trial, as to what then occurred: "Then he said, 'You know Mr. Savage told you when I would want a man to call upon you, and you should do it. You better do it.' Then I went to do it. I

said, 'What am I going to raise the ventilator with?' He said, 'By one of those steam-pipes.' So I got up on top of the boiler, on the steam-chest, and I took a full-length pipe, I think a three-quarter pipe, and I raised it up. It would not stay. I said, 'It won't stay up.' He said, 'Shove it up.' It was pretty dark and cold up there. I shoved it up, and it came out and rolled against the rod, and came down on top of my fingers. I hallooed that my fingers were off."

The plaintiff also testified that when the damper was open there was sufficient light inside the shaft to see these "catches" on the sides, but he thought the rod ran through the wall of the ventilator; that when he shoved the damper up it was so dark that he could not see the "hooks" at all, and when he poked it, it fell out of the "hooks" and fell upon his knuckles. It appears that the injury received was such as to sever the tendons of the index and middle fingers of the right hand, and was of a permanent character, causing a partial loss of the use of those fingers. The defendant offered no testimony, and after the close of the plaintiff's testimony, requested the court to instruct the jury as follows:

1. That under the pleadings and evidence in this case the plaintiff is not entitled to recover, and your verdict must be for the defendant.

2. The plaintiff has not alleged in his declaration in what way this ventilator, or the fan therein, was defectively constructed or maintained, and your verdict must, therefore, be for the defendant.

3. There has been no evidence introduced in this case tending to show when or by whom this ventilator or fan was constructed, or in what respect, if any, it was defectively constructed, or the cause of the fall of the fan at the time the plaintiff was injured, and, in the absence of such evidence, plaintiff has not made a case entitling him to recover.

4. It appears from the evidence in this case, and is not disputed, that when the plaintiff went into the fire-room on the day of the injury, and while he remained there, he was not subject to the orders of Daugherty; he, the plaintiff, had until one o'clock of that day to go where he pleased, and if, while the plaintiff was in the boiler-room, he was requested by Daugherty to close the ventilator, he was under no obligation, under his employment by the defendant, to obey such

request, and if he attempted to obey such request and was injured while so doing, the defendant cannot be held responsible therefor.

5. There is no competent testimony in this case showing the injury received by the plaintiff or the extent thereof. There is evidence tending to show the present condition of the plaintiff's hand, but whether the same was caused by the hurt received by the fan, or by the careless treatment thereof afterwards, does not appear; and as the evidence introduced does not tend to show that a competent physician or surgeon was employed to dress the hand, but only a medical student, there can be no presumption that it was properly treated and that the present condition of the hand results solely from the injury received; and, such being the case, you cannot, from the present appearance and condition of the plaintiff's hand, fix the damages he should receive, if any, in this case.

6. The evidence in this case shows the plaintiff to have been guilty of contributory negligence, and he cannot, therefore, recover.

7. There is no evidence tending to show that Daugherty had any authority over the plaintiff, or to direct the plaintiff to close the ventilator, and there can, therefore, be no recovery.

8. The declaration in this case alleges that the plaintiff was directed to open the ventilator, while the evidence shows he was directed to close it. This is a variance, and the plaintiff cannot recover.

The said court declined to and did not give the foregoing requests, or any or either of them.

The declaration contained three

The first count alleged that the defendant, for a period of two months prior to January 23, 1883, had kept and maintained the building known as the "Union Depot Elevator;" that the plaintiff was, at the time of the injury, and for two months prior thereto, in the regular employ of defendant to unload grain from cars in said elevator, and as such employee was engaged in the regular line of his duty; that the defendant, not regarding its duty towards plaintiff, constructed and maintained a certain ventilator, located in the eastern part of the elevator, and leading out of the fire-room, in the following negligent manner, to wit: "The fan-damper, or sheet-iron by which the supply of air coming through said ventila-

tor was regulated, was insufficiently and improperly fastened within the pipe forming part of said ventilator, and in consequence of which negligence, and while said plaintiff was engaged in working for said defendant in the line of his employment, in the exercise of due care, the said damper or sheet-iron, by which said supply of air was regulated, fell from its proper position in said pipe, which is a part of said ventilator, and on and against the arm of said plaintiff."

The second refers to the ownership and operation of the elevator, and the negligent manner in which the ventilator was constructed and maintained; to the allegations of the first count; and then alleges that the defendant, acting through its properly authorized agent, while the plaintiff was in its employ for the purpose of performing the work above described, negligently ordered the plaintiff to close the ventilator; that the work of closing the ventilator was beyond and outside of the scope of his employment, and was work of which he knew nothing—neither the duties nor dangers; and that, acting in accordance with said order, and acting with due care, he attempted to close the ventilator, and in consequence of the negligent construction and maintenance of said ventilator, and the negligent order above described, was injured.

The third count is more general, and alleges that defendant constructed and maintained on said elevator a certain ventilator, constructed and maintained with a fan or damper, made and used for the purpose of regulating the supply of air passing through the ventilator, and which was fastened in the pipe or cylinder forming a part of said ventilator. The negligence of defendant is then alleged to consist of ordering the plaintiff to do work outside of the scope of his employment, to wit, the work averred in the last count, and under the same circumstances averred therein.

The defendant's counsel contends that the plaintiff has not in his declaration set forth, pointed out, or suggested in what way the fan or damper was insufficiently or improperly fastened. He has not alleged or pointed out any particular act of negligence, or what in this case constituted the act of

negligence, which caused or contributed to the injury. It is true that the declaration does not point out or suggest in what way the damper was insufficiently or improperly fastened. It states, however, a cause of action. There was no demurrer, and it must be held sufficient after verdict. Moreover, the third count of the declaration does not allege negligence in the construction or maintenance of the ventilator, but negligence of defendant in ordering plaintiff to perform duties outside of the scope of his employment, whereby he was injured. This disposes of the first and second requests to charge, and the errors assigned thereon.

The eighth request is not borne out by the record before us. It appears to have been corrected in this respect, and the word "open," where it occurs in the declaration, is erased, and the word "close" inserted in the place thereof.

It is claimed by the defendant's counsel that at the time of the alleged injury the plaintiff was not in the defendant's employ for any purpose; that he had been released or discharged until one o'clock, and was at liberty to go wherever he pleased; that the time was his own and not his master's; and when he went outside of the elevator building the master was not responsible for his acts; that he owed no duty to his master until the time for him to resume his employment, and whatever he did during this time was voluntary on his part; that during this time the master owed no duty to the plaintiff, certainly none to maintain a ventilator which was not for the benefit of those who might resort there for their own comfort or convenience merely; that the master had not invited him there, nor held out any inducements for him to go there.

If this position is correct, it follows as a matter of course that the plaintiff cannot recover. His action is based upon the existence of the relation of master and servant at the time of the accident, and if such relation did not in fact exist at that time, neither party owed to the other any duty upon which negligence could be predicated. At the conclusion of the argument of this case I had grave doubts whether the relation of master and servant existed between the parties at

the time of the accident, but a subsequent examination of the testimony, and reflection, leads me to the conclusion that the plaintiff was engaged in the service of the defendant at the time he was injured. He was not engaged by the day, week, month, or year. The time for which he was employed was indefinite. He could be discharged at any time. He could quit the service of his employer at any time. He had not been discharged or dismissed from service, and was subject to the order and direction of the foreman at any time. He had been told by Mr. Savage that he could have an hour and a half for dinner. He had, however, eaten his dinner, and was subject to be called upon to perform work at any moment. His work was done under the direction of Mr. Savage. This he understood, and had refused to perform service under the direction of any other person. Mr. Savage had directed him to do whatever Daugherty told him to do. It was his duty, therefore, to obey Daugherty on this occasion; and, set to work by Daugherty, he was in the service of the defendant as much as if directed to perform the work by Mr. Savage himself. It does not follow that because plaintiff was given an intermission from work of an hour and a half for dinner, he ceased during that time to be the servant of defendant. If during that time he had in his care or custody any of his master's property requiring his attention and oversight, or if called upon to perform work by the master, or by one having authority to command his service, the relation would still exist, arising in the one case from the duty to properly care for the property of the master, and in the other from the duty to perform the service.

In *Whatman v. Pearson* L. R. 3 C. P. 422, a servant employed to drive a horse and cart a certain number of hours each day, with an hour's interval for dinner, acting contrary to his instructions, and during intermission, drove the horse to his home, and left it in front of his house while eating his dinner. The horse ran away and damaged plaintiff's railings. It was left to the jury to say whether the servant was negligent, and whether he was acting at the time within the scope of his employment, and the jury found in the affirma-

tive upon both points.    Upon a motion for nonsuit or new trial on the ground of misdirection, all the judges held the instruction proper, and that there was sufficient evidence to support the finding of the jury.

True, the plaintiff in this case during the intermission given was at liberty to go where he pleased, and was not obliged to stay upon the premises.    If he did stay, however, he could in no just sense be considered a loiterer or a trespasser upon the premises of another.    Having been accustomed to bring his dinner, he was not obliged to go upon the street to eat it; but under the circumstances, there was an implied permission to remain upon the premises while at his repast.    I cannot accede to the proposition that he owed no duty to his master until the time stated had elapsed for him to resume his employment, and that whatever he did during this time was voluntary on his part.    On the contrary, aside from a reasonable time to partake of his meal, it was his duty, if called upon, to resume his labor, and upon complying with such request what he did would not be voluntary on his part, in the sense that it would be outside of the scope of his employment.

But it is urged that the work he was called to do was not within the scope of his employment; neither was it in furtherance of his master's interests, but was merely for Daugherty's personal comfort and convenience, and that it could not have been supposed that the plaintiff would have been expected to obey the order given.    Regard must be had, not only to the nature of the work which he was hired to do, but to the occasion and the circumstances attending the particular transaction.

During the forenoon of the day in which he was injured, the plaintiff had been at work, not in loading and unloading grain in the elevator, but by Mr. Savage's direction, in taking down steam-pipes and placing them upon the boiler for the purpose of thawing them out; and he had before been directed to remove boards from off the boilers, and also, at another time, to remove dirt from this room.    His work, therefore, in this room had been of a general nature, and such

as he had been specially directed to do by Mr. Savage and by Mr. Daugherty; and so far as such work was beneficial to the master's interests, it is difficult to see why the closing of the ventilator was not as much in that line as any work he had been ordered to do in that room. It is easy to perceive that closing the ventilator would be beneficial to the master's interests if it facilitated the work of thawing out the steam-pipes by raising the temperature in the room, or if it added to the comfort and convenience of the employees of the master, and thus enabled them to perform their duties better. Indeed, it would seem that the object in constructing the ventilator over the boiler was to carry off the heated air, and thus promote the comfort and convenience of those employed in the furnace-room in hot weather. It is, or ought to be, conceded that whatever adds to the comfort or convenience of the employee while rendering service is beneficial to the employer, and I have no difficulty in reaching the conclusion that the work of closing the ventilator was an act done to advance the interests of defendant, and was not of a nature so foreign to plaintiff's employment that he would have been justified or expected to have refused obedience to the order requiring him to perform it.

It is furthermore claimed that it does not appear when this ventilator was constructed, nor by whom; and that it does not appear that there was any want of due care in its construction, or that the master had any knowledge of any defects in its construction or arising afterwards. The method of construction was fully given in the testimony. It is claimed that it was negligently constructed, in that there was nothing to prevent the arbors of the damper from being lifted from their places when the damper was being closed from below. It requires neither testimony nor argument to show that the ventilator, as constructed, was incomplete. It was not supplied with any means whatever to close or regulate it. A chain, wire, or a cord attached to the upper or opposite side of the damper to that which was weighted, descending to the convenient reach of a person below, would be the most ordinary device to be used for the purpose. Constructing

the ventilator with a damper shows that it was intended at times to be used; and since no method was provided for closing it by pulling the upper portion down sufficiently to close the aperture, no other means remained than to push up the lower part to accomplish the purpose, in which case the danger would be imminent of lifting one arbor or the other, so that the opposite one would slip from its supporting jaw and thus precipitate the damper. If this was the method intended to be used in closing the damper, the arbors should have extended through the sides of the shaft, or otherwise made secure in their position. As there was no other method provided for closing the damper than such as was pursued in this case, it is quite clear that the jury were justified in finding from the testimony that the ventilator was negligently constructed or maintained in the manner pointed out in the declaration.

I discover no error in the record covered by the fifth request of defendant to charge. The question of contributory negligence was properly submitted to the jury, and it was not error to refuse the sixth request. The other requests and rulings therein are covered, or intended to be, in what has been said. The case was submitted to the jury mainly upon the proposition that the defendant had negligently put the plaintiff to perform work outside the scope of his employment, of the dangers of which he knew nothing, by reason whereof he was injured. There were no exceptions to the charge as given. The testimony was sufficient to justify the verdict, and

The judgment should be affirmed.

The other Justices concurred.