MAY A. GOOCH *vs.* CITIZENS ELECTRIC STREET RAILWAY COMPANY.

Essex.    March 9, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Agency.    Street Railway.    Employers' Liability Act.*

A motorman in the general employ of a street railway company, who at his request is excused from duty during the morning of a certain day, an extra man being put in his place, with the arrangement that he shall run an extra car in the afternoon or find a substitute to do so, after he is thus excused and before he has found a substitute for the afternoon, is not an employee of the company within the meaning of the employers' liability act, and if he goes into a telephone booth in a waiting room at a station of the company, where he afterwards is found dead, the circumstance that, when killed, he may have been using or intending to use the telephone in completing arrangements to be relieved from duty in the afternoon, even if it is a fact instead of a pure conjecture, does not make him an employee of the company, because the making of an arrangement for a substitute or finding out whether an extra car was to be run that afternoon would be for himself and not in behalf of the company.

TORT by the widow of one Howard G. Gooch, late of Newburyport, under R. L. c. 106, § 73, to recover for the instantaneous death of her husband on July 26, 1907, alleged in the first count to have been caused by a defect in the ways, works or machinery of the defendant, and alleged in the second count to have been caused by the negligence of a person intrusted with and exercising superintendence. Writ dated September 7, 1907.

At the trial in the Superior Court before *Bishop,* J., there was evidence from which the jury could find that the death of the plaintiff's husband was due to an electric shock received while he was in a telephone booth of the defendant, on the first floor of a building on Market Square in Newburyport, the lower floor of which was used as a waiting room, and the second for the offices of the defendant. There also was evidence from which the jury could find that the electric current to which the shock was due was caused by the sagging of a wire of the Newburyport Gas and Electric Company, which carried a high current, upon the telephone wire of the defendant, which was supported on poles beneath the wire of the Newburyport Gas and Electric Company. It further appeared that the telephone wires of the defendant had been strung on its own poles some eight years before the accident and that the wires of the Electric Company were strung on the poles of the New England Telephone and Telegraph Company some four years before the accident. Other facts appeared in evidence which are stated in the opinion. At the close of the evidence the defendant asked for certain rulings, of which the first, second and eighth were as follows:

" 1. On all the evidence the plaintiff is not entitled to recover on the first count.

" 2. On all the evidence the plaintiff is not entitled to recover on the second count."

" 8. On all the evidence the intestate was not, at the time the accident occurred, an employee of the defendant within the meaning of the employers' liability act."

The judge refused to make these and other rulings requested by the defendant, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $5,000. The defendant alleged exceptions.

*E. K. Arnold,* for the defendant.

*J. P. Sweeney & L. S. Cox,* for the plaintiff, submitted a brief.

SHELDON, J. In this action, brought under the employers' liability act, R. L. c. 106, § 73, there can be no recovery unless the plaintiff's intestate, at the time of the injury which caused his death, was acting in the employ of the defendant. *Dane* v. *Cochrane Chemical Co.* 164 Mass. 453, 457. The first and most

important question is, accordingly, whether at that time the relation of employer and employee existed between the defendant and the deceased.

He was in the general employ of the defendant as a regular motorman, paid, as the evidence indicates and as his counsel state in their brief, at a fixed rate per hour. His hours were from 10.45 A. M. to 12.45 P. M., and from 5.15 P. M. to a late hour of the night. On the morning of the day of the accident he went to the defendant's car barn, and applied to Mr. Butterfield, who was there in charge, to be relieved from work on that day, and after some talk it was arranged between them that one Bushee, a spare man or substitute, should run the forenoon trips of Gooch, the deceased, and that Gooch should either run an extra car in the afternoon or himself find a substitute to do so. Gooch thereupon left the car barn and rode on a car of the defendant to a waiting room at Market Square. On the way thither, in conversation with the conductor of that car, he stated that he was not working, but would have to run an extra car "if he could not find a fellow named Follansbee." Then Gooch went into the telephone booth in the defendant's waiting room at Market Square, and soon after was found there dead.

Upon these facts it is impossible to distinguish the case at bar from *Dickinson* v. *West End Street Railway*, 177 Mass. 365. In that case a motorman in the general employ of the defendant, going home to dinner after his morning's work, was injured while riding on the front platform of one of the defendant's cars. He was being carried free of fare, under a rule of the company allowing this privilege to its employees in uniform. His injury was due to negligence of the motorman who was operating the car; but it was held that he was not then in the employ of the defendant, and accordingly was not a fellow servant of the motorman of that car. Here, as in that case, the regular work assigned to Gooch consisted of a certain number of trips at fixed and regular times each day. Here, as there, he was not upon actual duty; his time was his own, until some time in the afternoon. His pay had stopped. He was discharged until a fixed hour in the afternoon. He rode on the defendant's car to Market Square, and went into the telephone booth at that station, not in the line of his duty in the course of his employ-

ment but for his own purposes.   See the cases cited in *Dickinson* v. *West End Street Railway, ubi supra*, on p. 368.

The circumstances here are very different from those of *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, or *Packet Co.* v. *McCue*, 17 Wall. 508.   Gooch had left the defendant's premises and had become his own man.   He was a passenger on the defendant's car, not a mere servant.   For the same reasons, such cases as *Walbert* v. *Trexler*, 156 Penn. St. 112, and *Broderick* v. *Detroit Union Railroad & Depot Co.* 56 Mich. 261, do not help this plaintiff.   This case resembles more nearly *Wink* v. *Weiler*, 41 Ill. App. 336.   Nor was Gooch leaving the defendant's premises by the means of exit provided for that purpose.   *Feneff* v. *Boston & Maine Railroad*, 196 Mass. 575, 577.

Nor can the plaintiff be helped by the suggestion made in her behalf that Gooch was using or intending to use the telephone in completing arrangements that had been partially made with reference to his being relieved from duty in the afternoon, and so was really acting in the service of the defendant when he was killed.   In the first place, this is mere conjecture.   *McGee* v. *Boston Elevated Railway*, 187 Mass. 569.   *Donaldson* v. *New York, New Haven, & Hartford Railroad*, 188 Mass. 484.   *Lizotte* v. *New York Central & Hudson River Railroad*, 196 Mass. 519. In the next place, it was for Gooch himself, if he wished to have his leave of absence run through the afternoon, to make the arrangement with some substitute.   So it was for him to ascertain, if he needed further information, whether the extra car was to be run that afternoon.   All these arrangements, as the matter had been left, were his individual concern, rather than that of the company.   There was nothing to show that Gooch was in any way acting in the service of the company in attempting to use the telephone, or to answer it if he heard a ringing from it.

It follows from what has been said that the jury were not warranted in finding that the plaintiff's intestate was in the employ of the defendant at the time of the accident which caused his death; and the defendant's first, second and eighth requests for instructions should have been given.   The other questions raised in the case become immaterial and need not be considered.

*Exceptions sustained.*