GORMAN *v.* JAFFA.

1. APPEAL AND ERROR—FINDING OF JURY CONCLUSIVE.

In action for personal injuries caused to plaintiff while on defendant's premises, where question as to whether plaintiff was invitee was properly submitted, finding of jury is conclusive.

2. MOTOR VEHICLES—MASTER AND SERVANT—LIABILITY OF MASTER FOR EMPLOYEE'S NEGLIGENCE—DIRECTED VERDICT.

In action for personal injuries against automobile sales company, where it appears that automobile was placed in service department of defendant's garage and left in reverse gear, that its bookkeeper obtained permission from manager to drive it to go to lunch, and that, in starting, it backed against plaintiff, invitee of defendant, causing serious injuries, trial court properly refused to direct verdict in favor of defendant on ground that driver was not, at time of accident, engaged in any work for defendant, and that operation of car was not in course of his employment.

Error to Oakland; Gillespie (Glenn C.), J. Submitted October 24, 1929. (Docket No. 159, Calendar No. 34,644.) Decided December 3, 1929.

Case by Ray Gorman against Lewis A. Jaffa, doing business as the Huron Motor Sales Company, Frank Drouillard, and others, for personal injuries. From a verdict for plaintiff, defendant Jaffa brings error. Affirmed.

*Beaumont, Smith & Harris (Albert E. Meder* and *Fred G. Cadwell,* of counsel), for appellant.

*George Cram* and *Bresnahan & Groefsema,* for appellee.

As to whether relationship of master and servant still exists where servant goes on master's premises before, after, or between hours of actual labor, see annotation in 12 L. R. A. (N. S.) 853; 36 A. L. R. 912.

POTTER, J. Plaintiff sued Lewis A. Jaffa, doing business as Huron Motor Sales Company, Frank Drouillard, William Jaffa, and Thomas H. Maynard for damages resulting from injuries caused by defendants' negligence. Proper service was not made upon William Jaffa. At the conclusion of the testimony, judgment was directed in favor of Thomas H. Maynard, defendant. The case was submitted to the jury as to the liability of Louis A. Jaffa, doing business as Huron Motor Sales Company, and Frank Drouillard. Plaintiff had judgment for $15,000, and defendant Lewis A. Jaffa, doing business as Huron Motor Sales Company, alone brings error.

October 31, 1928, defendant Lewis A. Jaffa was operating a garage and salesroom for the sale of automobiles in the city of Pontiac under the name of Huron Motor Sales Company, which was then in charge of his manager, Thomas H. Maynard. Defendant Drouillard was the owner of the building and left his automobile in the garage to have service performed upon it, and was loaned by Maynard an automobile to use during the time his car was in the garage. At that time Maynard had some conversation with Drouillard about using his automobile during the time Drouillard was using the other car. Maynard claims Drouillard gave him permission to use the car generally if necessary. Drouillard claims he gave him permission only to use his car for the purpose of making a demonstration. Drouillard's car was placed on the wash rack in the service part of the garage and left in reverse gear by an employee of the Huron Motor Sales Company, and shortly thereafter plaintiff came to defendant's salesroom but whether as a prospective purchaser of an automobile or for the purpose of visiting with the salesman West is in dispute. While plaintiff was sitting

in the salesroom with his back toward large double doors leading from the garage into the salesroom, William Jaffa, a bookkeeper and general office clerk in the employ of the Huron Motor Sales Company, asked and received permission from Maynard to go to lunch and to use Drouillard's car, then sitting on the wash rack, for that purpose. According to the testimony of William Jaffa, he examined the gear shift and thinking the gear was in neutral stepped on the starter. The car moved rapidly backward and struck the doors behind plaintiff, causing them to bulge inward and a portion of the frame to be torn off. Plaintiff claims he was struck on the back of the head by the doors. Defendants deny this. Plaintiff walked outside the garage after the accident, complained of feeling dizzy, was subsequently removed to the hospital in a police ambulance, and was confined in the hospital for a long period of time. Since the alleged injury plaintiff has been partially paralyzed, confined to his bed, and under the care of a nurse and physician. Defendant claims plaintiff was not injured, and is suffering with hysteria. Plaintiff claims his injuries are permanent.

Defendant assigns many errors, most of which are based upon the proposition that William Jaffa was not acting within the scope of his employment at the time plaintiff was injured, and that a verdict should have been directed in favor of defendants. The error principally relied upon is that the proof shows that William Jaffa who operated the car at the time of plaintiff's injury, though an employee of the defendant at the time of the injury, was not engaged in the performance of any work for defendant, but was on his way to lunch; that his operation of the automobile was not in the course of his employment,

and therefore defendant Huron Motor Sales Company is not liable to respond in damages to plaintiff. The question of whether plaintiff was a licensee or an invitee was properly submitted to the jury, and it found that plaintiff was there as an invitee and its finding on this record is conclusive.

Defendant relies upon *Boner* v. *Eastern Michigan Power Co.,* 193 Mich. 629; *Brinkman* v. *Zuckerman,* 192 Mich. 624; *Murphy* v. *Kuhartz,* 244 Mich. 54, and other cases.

In *Boner* v. *Eastern Michigan Power Co.,* it was held that plaintiff was not, at the time of his injury, acting within the scope of his employment. The opinion suggests that if plaintiff had remained on defendant's premises and had been in charge of any of his employer's property or had been subject to the employer's orders, the holding might have been otherwise.

In *Brinkman* v. *Zuckerman,* defendant's chauffeur borrowed defendant's automobile and while operating it in his own business and not about defendant's business or near his place of business, negligently ran defendant's automobile against the front of plaintiff's store. The proof showed the chauffeur was acting entirely on his own initiative, away from defendant's premises, not on defendant's business and defendant was held not liable.

In *Murphy* v. *Kuhartz,* plaintiff brought suit to recover damages claimed to have been caused by the negligence of defendant's employee. Defendant was engaged in the cartage business. One Metz was the driver of one of defendant's trucks. On the day of the accident Metz was engaged in delivering merchandise. Instead of returning from the last point of delivery to the warehouse, he proceeded a considerable distance in an opposite direction from the

warehouse to his home where he had dinner, and then began his return to the warehouse. The defense was that Metz at the time of the injury was not acting within the scope of his employment. The trial court directed a verdict for defendant. It is said:

"When the accident happened, he had accomplished his personal purpose and was well on his way by a direct route to the warehouse. So, assuming that in going to his dinner he temporarily abandoned his master's business, the question is, Had his service been resumed at the time of the accident? * * *

"There are cases which hold that where a servant in driving his master's truck so deviates from his regular route as to suspend the relation of master and servant, it is immediately restored when he starts to return. * * * But by better authority it is held that the relation of master and servant is not restored until he has returned to the place where the deviation occurred or to a corresponding place, some place where, in the performance of his duty, he should be."

All of these cases are clearly distinguishable from the case at bar.

In *Broderick* v. *Detroit Union Depot Co.*, 56 Mich. 261 (56 Am. Rep. 382), plaintiff, an employee, was injured during intermission for dinner. It was claimed the relation of master and servant did not exist between plaintiff and defendant at the time of the injury. It is said:

"It does not follow that because plaintiff was given an intermission from work of an hour and a half for dinner, he ceased during that time to be the servant of defendant. If during that time he had in his care or custody any of his master's property requiring his attention and oversight, or if called upon

to perform work by the master, or by one having authority to command his service, the relation would still exist, arising in the one case from the duty to properly care for the property of the master, and in the other from the duty to perform the service.''

In *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271 (18 Am. St. Rep. 441), one Root, an employee of the iron company employed at its iron furnace at Negaunee, was injured. It was claimed that Root was not in the employ of the company at the time he was injured. It is said:

''Conceding that the deceased had started to go down town to attend to some private business of his own, which he was in the habit of doing every day, or nearly every day, still, when this accident occurred, he must be considered to have been in the employ of the defendant. There was no stated time in which he was authorized by his employment to leave the service of the defendant and go down town, and attend to his own business. It would appear that his duties at the furnace were not so exacting but that he could go about his private business at times without detriment to the defendant, and there is no doubt but he was permitted to do so. But his employment by the defendant was such that he was not authorized to subordinate its business to his own, and at any time during working hours when he was on defendant's premises his duty was to look after and perform his duties there. His duties were multifarious, and if, at any time, after he had started to go down town, and while on defendant's premises, any need of his services had arisen, it would have been his duty, under his employment, to have at once stopped and given such services. He was not permitted at any time to say in his own mind, 'I will now leave the employment of the company at once, and go about my own business,' regardless of what might occur on the premises before he left them re-

quiring his care and attention under his employment. He was not out of the employment of the defendant until he was off its premises. *Broderick* v. *Depot Co.,* 56 Mich. 261, 268 (56 Am. Rep. 382).''

*Brink* v. *J. W. Wells Lumber Co.,* 229 Mich. 35, arose under the workmen's compensation act. The question was whether plaintiff was, when injured, within the scope of his employment. It is there said:

''Plaintiff was on the premises of the employer, going from his work, leaving within a reasonable time, following a customary and permitted route off the premises, and in the immediate vicinity of his labor. It is a general rule that an employee, under such circumstances, is still in the course of his employment. *Papinaw* v. *Railway Co.,* 189 Mich. 441; 1 Bradbury's Workman's Compensation (2d Ed.), p. 419; *White* v. *Eastern Manfg. Co.,* 120 Me. 62 (112 Atl. 841, 16 A. L. R. 1165); 20 N. C. C. A. 539, note; 22 N. C. C. A. 545, note; 12 N. C. C. A. 659, note; Harper Workmen's Compensation, 46; *DeMann* v. *Hydraulic Engineering Co.,* 192 Mich. 594; *Novack* v. *Montgomery Ward & Co.,* 158 Minn. 495 (198 N. W. 290).

'' 'In going to and from his place of work upon the premises owned or controlled by his employer, an employee is deemed as a general rule to be engaged in the employment.' * * * 18 R. C. L. p. 584.

''And see 50 L. R. A. 468; *Broderick* v. *Union Depot Co.,* 56 Mich. 261 (56 Am. Rep. 382); *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271 (18 Am. St. Rep. 441); *Lienau* v. *Telephone Exchange Co.,* 151 Minn. 258 (186 N. W. 945).

''There are exceptions, of course, such as where the employer's premises are a railroad, stretching endless miles across the country, and the accident happens at a place far removed from the actual

place of employment. See *Hills* v. *Blair*, 182 Mich. 20, where it was said:

" 'The employment is not limited by the exact time when the workman reaches the scene of his labor and begins it, nor when he ceases, but includes a reasonable time, space, and opportunity before and after, while he is at or near his place of employment. One of the tests sometimes applied is whether the workman is still on the premises of his employer. This, while often a helpful consideration, is by no means conclusive. * * *

" ' ' "It is not a sufficient test that the workman should be on the premises of the employer; but it may be sufficient that he is in such a state of proximity as may be treated as a reasonable margin in point of space." *Hoskins* v. *Lancaster*, 3 B. W. C. C. 476.'

"And in *Guastelo* v. *Railroad Co.*, 194 Mich. 382 (L. R. A. 1917 D, 69):

" 'The protection of the law extends to a reasonable time and space for the employee to leave the locality or zone of his work and while he is in proximity, approaching or leaving his place of employment by the only means of access thereto.'

"See *Clifton* v. *Kroger, etc., Co.*, 217 Mich. 462.

"The distance of the place of the accident on the employer's premises from the actual place of the employment, whether it be factory or warehouse, is not so great as to bring this case within exception noted in the *Hills Case*.

"In *Hoskins* v. *Lancaster*, *supra*, it was held, quoting syllabus:

" 'A collier was injured by a gate swinging back on him. The land on both sides of the gates belonged to his employers and the gates were about 150 yards from the lamp-room to which the collier was first going on his way to work. The passage through the gate was the reasonable mode of access to the collier's work. On a claim for compensation the county court judge held that the workman was entitled to compensation and that the accident arose out of and in the course of the employment.

" ' *Held*, that there was evidence to support this finding.'

"The accident arose out of and in the course of the employment. *Rayner* v. *Sligh Furniture Co.*, 180 Mich. 168 (L. R. A. 1916A, 22, Ann. Cas. 1916A, 386); *Wabash Ry. Co.* v. *Industrial Commission*, 294 Ill. 119 (128 N. E. 290)."

In *McKeon* v. *Manze*, 157 N. Y. Supp. 623, plaintiff was injured by one Taft, an employee of Manze. Defendant ran a hotel and bar. Taft ran a lunch

counter in connection with the business. After the
lunch counter was closed, Taft went behind the bar
to wash up. In an altercation with one "Happy,"
a beer glass was thrown by Taft and plaintiff in-
jured. It was contended by defendant the relation
of master and servant did not exist between defend-
ant and Taft at the time of the injury. It is said:

"It may be said generally that the relation of
servant and master does not begin or terminate nec-
essarily the instant the particular duties the servant
has to perform begins or ends. There is a long line
of cases holding this general doctrine. An employee
has been held still an employee while taking time
off for his meals, while still on railroad premises.
*United States* v. *Chicago, etc., R. R. Co.* (D. C.), 197
Fed. 624. One going to work upon the defendant's
premises has been held a servant. *Boldt* v. *N. Y.
Central R. R. Co.*, 18 N. Y. 432. One riding on a
pass to and from his work has been held a servant.
*Vick* v. *N. Y. Central R. R. Co.*, 95 N. Y. 267 (47 Am.
Rep. 36). To the same effect are the cases of *Russell*
v. *Railroad,* 17 N. Y. 134, and *Vroom* v. *N. Y. Central
R. R. Co.*, 129 App. Div. (N. Y.) 858 (115 N. Y. Supp.
1063), affirmed in 197 N. Y. 588 (91 N. E. 1121). In
*McDonald* v. *Simpson-Crawford Co.*, 114 App. Div.
(N. Y.) 859 (100 N. Y. Supp. 269), it was held (syl-
labus):

" 'The fact that the actual working hours were over and the
saleswoman was going to the top floor to resume her street clothes,
did not end the relation of master and servant.'

"In *North Carolina R. Co.* v. *Zachary,* 232 U. S.
248 (34 Sup. Ct. 305, Ann. Cas. 1914C, 159), an em-
ployee was injured while crossing a railroad yard
of his employer to dinner, and it was held that the
relation of master and servant still existed, although
he was going to his own dinner, off the railroad
premises. In *Muller* v. *Oakes, etc., Co.*, 113 App.
Div. (N. Y.) 689 (99 N. Y. Supp. 923), a fireman was
engaged in washing his overalls at a tank, and it was

held that, though the fireman was washing his own clothes, he was not outside the scope of his own employment. See also *Muhlens* v. *Obermeyer*, 83 App. Div. (N. Y.) 88 (82 N. Y. Supp. 527); *Famborille* v. *Atlantic Gulf & Pacific Co.*, 155 App. Div. (N. Y.) 833 (140 N. Y. Supp. 529), affirmed in 213 N. Y. 666 (107 N. E. 1077).''

In *Commonwealth* v. *Railway Co.*, 143 Mass. 501 (10 N. E. 506), defendant was indicted for the injury and death of Allen, caused by the negligence of Fenner, the driver of the car horses, in leaving the car to go to breakfast. It was contended by the defendant the relation of master and servant did not exist between it and Fenner at the time of Allen's injury. It is said:

''The facts show that the driver Fenner was relieved by one Ashley, to enable Fenner to go to his breakfast. Fenner was in the employ of the defendant corporation, as a driver of one of its horse cars. To perform this duty it was necessary for him to go upon the car, and it was also necessary that he should leave the car when he went to his meals, and when his service was completed for the day. We do not think that he was exclusively within the scope of his employment when he was handling the reins and driving the horses. When going upon the car for that purpose, and when leaving it after he had stopped driving, he was within the scope of his employment. His employment was continuous, and his service began when he stepped upon the car for the purpose of driving the horses, and continued until he left the car, at least if he left immediately after giving the reins and horses in charge of another driver. If in going upon the car to act as driver, or in leaving the car at once after ceasing to be driver, he negligently and carelessly came in contact with a passenger, by reason of which the passenger suffered injury, we think that the driver in so doing was a servant of the corpora-

tion, was acting within the scope of his employment, and that the corporation is responsible to the passenger injured for the negligent acts of its driver. The company is liable for whatever injury occurs to a passenger through the negligence and carelessness of its servant in doing what is necessarily incident to his employment."

In *Sina* v. *Carlson,* 120 Minn. 283 (139 N. W. 601), it is said:

"The rule is that, if within the course of his employment an employee is permitted to use his employer's vehicle to facilitate the performance of necessary errands of his own, he is still an employee while so doing, and the principle of *respondeat superior* applies. This rule has frequently been applied to cases where railway employees have been permitted to use an engine in going to and from meals (*E. St. Louis Con. Ry. Co.* v. *Reames,* 173 Ill. 582, 586 [51 N. E. 68]; *Reilly* v. *H. & St. J. Ry. Co.,* 94 Mo. 600, 608, 609 [7 S. W. 407]; *Steffen* v. *McNaughton,* 142 Wis. 49 [124 N. W. 1016, 26 L. R. A. (N. S.) 382, 19 Ann. Cas. 1227]); or to and from work (*Gillshannon* v. *S. B. R. Corp.,* 10 Cush. [Mass.] 228; *Ewald* v. *C. & N. W. Ry. Co.,* 70 Wis. 420, 428 [36 N. W. 12, 591, 5 Am. St. Rep. 178]); and generally to the case of employees who are permitted to use the employer's instrumentalities for similar purposes (*Mulvehill* v. *Bates,* 31 Minn. 364 [17 N. W. 959, 47 Am. Rep. 796]; *Morier* v. *Ry. Co.,* 31 Minn. 351, 353 [17 N. W. 952, 47 Am. Rep. 793])."

We think the trial court properly submitted the disputed question of fact to the jury. Its finding, on this record, is conclusive. There are other assignments of error. None of the claimed errors warrant a reversal of the judgment, which is affirmed, with costs.

NORTH, C. J., and FEAD, BUTZEL, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.