MARY GOLDBAUM v. JAMES MULLIGAN PRINTING AND PUBLISHING COMPANY, a Corporation, and J. A. WENTZ, Appellants.—149 S. W. (2d) 348.

Division Two, April 3, 1941.

*Fred H. Blades* and *Moser, Marsalek & Dearing* for James Mulligan Printing and Publishing Company.

846

*R. C. Brinkman* for J. A. Wentz.

*Everett Hullverson* for respondent; *Orville W. Richardson* of counsel.

848

TIPTON, P. J.—In the Circuit Court of the City of St. Louis, Missouri, respondent obtained a judgment against both appellants in the sum of $10,000 for personal injuries she received as a result of being run over by an automobile driven by appellant J. A. Wentz in Mandel's Crossing, Michigan. We have consolidated the separate appeals of these appellants.

The appellant, the Mulligan Printing and Publishing Company, (hereafter referred to as the printing company), contends that its demurrer to the evidence should have been sustained because the evidence shows that appellant Wentz was not in the scope or course of his employment for it at the time of the accident.

In regard to this issue, the facts as shown by the evidence are that Wentz was employed by the printing company as a salesman; he was given the title of vice-president and furnished with a card bearing that title; he was never elected to that office and owned no stock in the company; and these cards were furnished for the purpose of giving him prestige with his customers.

Wentz used his own automobile in his business and was paid on a commission basis with a drawing account; he kept an expense account, and all expenses in the operation of his automobile while on his employer's business were paid by the printing company; he usually notified his employer where he was going on business as he had no fixed territory, that is, he could sell wherever he chose to go, and he had prospective customers upon whom he made calls in the surrounding states, including Missouri, Illinois and Michigan.

On August 12, 1937, Wentz received an order from a customer at Decatur, Illinois, and returned to St. Louis that day. St. Louis was his home and the printing company was also located there. The next day he left St. Louis with his family to spend a few days' vacation in Michigan. It was necessary to get further information in regard to the order he received at Decatur, so with the knowledge

of the printing company he stopped at Decatur on his way to Michigan, but the manager was not in so he made an appointment to see him on his return, either on August 18th or 19th. He then drove on to White Hall, Michigan, and on August 18th he started back with his family to Decatur to fulfill his appointment. As he reached Mandel's Crossing, Michigan, he had an accident which resulted in injuries to respondent. On August 19th he continued his trip to Decatur, obtained the necessary information from his customer, and then returned to St. Louis.

Both appellants and respondent agree that this issue must be governed by the laws of Michigan.

The printing company contends that under the laws of Michigan, the master is liable for his servant's negligence only when the servant is at the very time engaged in the service of his master and while about his master's business. Therefore, after Wentz left Decatur on his northbound trip to White Hall, Michigan, and until he reached Decatur upon his return trip, he was serving his own purpose, and the master, the printing company, was not liable for the injuries to respondent.

On the other hand, respondent contends that so long as the trip was caused at least concurrently by both the master's business and the servant's pleasure, under the doctrine of *respondeat superior*, the printing company expected to and did derive a benefit from the trip; therefore, it was liable to her. In other words, Wentz, with no fixed territory or hours of labor, had the power to end his vacation and resume his employment in White Hall, Michigan, on the morning of August 18th, at which time he set out for Decatur with the express purpose of keeping an appointment with a customer in order to obtain necessary information from him. That is to say, under these circumstances, at least a concurrent cause of the journey southward was to serve the master, the printing company, as well as for Wentz and his family to return to their home; therefore, the master was liable to respondent for the injuries she received.

In the case of Brinkman v. Zuckerman, 192 Mich. 624, the defendant's chauffeur drove him to a place on Brush Street in the city of Detroit at 8 o'clock in the evening. He was directed to return for him at 12 o'clock. In the interval his time was his own. He would have been engaged in his master's business when returning to the garage with his car; but he did not do that. He drove two and one-half or three miles to the home of his father-in-law where he spent the evening. About fifteen minutes to 12 o'clock he started to drive to the place where he had left the defendant and on the road there he had an accident. The court held that this was a total departure from any business of his master. He had entirely broken the connection between himself and the master and before there was any reconnection he caused the damage complained of. In passing on

the case the court said, "It is suggested by counsel that the chauffeur, in returning from his father-in-law's place, must have been acting within the scope of his employment, even if he was not so acting when going out there. And the reason given for the suggestion is that he was returning for the very purpose of keeping his engagement with defendant. But, in fact, no part of the trip, either going or returning, was connected with defendant's business. It was as much the chauffeur's affair to get back from Dix Avenue as it was to go out there."

In the cases of Murphy v. Kuhartz, 244 Mich. 54, 221 N. W. 143, and Irwin v. Williamson Candy Co., 268 Mich. 100, 255 N. W. 400, l. c. 401, the Supreme Court of Michigan said:

"There are cases which hold that where a servant in driving his master's truck so deviates from his regular route as to suspend the relation of master and servant, it is immediately restored when he starts to return. . . . But by better authority it is held that the relation of master and servant is not restored until he has returned to the place where the deviation occurred or to a corresponding place, some place where, in the performance of his duty, he should be."

Respondent relies upon the following Michigan cases: Stockley v. School District, 231 Mich. 523, 204 N. W. 715; Emery v. Ford, 234 Mich. 11, 207 N. W. 856; Nord v. West Michigan Flooring Co., 238 Mich. 669, 214 N. W. 236; Kerns v. Lewis, 249 Mich. 27, 227 N. W. 727; Gorman v. Jaffa, 248 Mich. 557, 227 N. W. 775; Wilhelm v. Angell, Wilhelm & Shreve, 252 Mich. 648, 234 N. W. 433; Anderson v. Schust, 262 Mich. 236, 247 N. W. 167; and Mann v. Board of Education, 266 Mich. 271, 253 N. W. 294.

Briefly, these cases hold that it is not necessary that the service of the employer be the sole cause of the journey, but at least it must be a concurrent cause, and if the work of the employee creates the necessity for travel, he is in the course of his employment though he is serving at the same time some purpose of his own.

We will not lengthen this opinion by discussing each of the above cited cases relied upon by respondent, but we will discuss only the case of Nord v. West Michigan Flooring Co., supra.

In that case, defendant manufactured flooring and sold and delivered refuse from its product for fuel by truck. On the morning of the accident the servant delivered two loads of fuel. On the way back to the plant after the second delivery he picked up two young women acquaintances, and for their accommodation took a longer route and drove to where the accident occurred. The Supreme Court distinguished that case from the case of Brinkman v. Zuckerman, supra, which case we have already discussed. In holding the master liable in the Nord case, the court said: "There is another class of cases to which . . . the instant case belongs. They are cases concerning the liability of the master where there is not a total severance

of the relation of master and servant, but some deviation by the servant from the strict course of his employment.''

In the case at bar there was a total severance of the relation of master and servant when Wentz left Decatur for Michigan, and under the laws of that State that relation was not resumed until he reached Decatur on his return trip. We think this case is governed by the law announced in the case of Brinkman v. Zuckerman, supra. That case cannot be distinguished from the case at bar.

The trial court erred in not sustaining appellant's, the printing company's, demurrer.

Appellant Wentz contends that his demurrer to the evidence should have been sustained by the trial court for the reason that the evidence shows that respondent was guilty of contributory negligence as a matter of law. We will, therefore, state the facts most favorable to respondent.

The evidence shows that the accident occurred at Mandel's Crossing, Michigan. At this place U. S. Highway No. 12, a four-lane concrete highway about forty feet wide, runs north and south. The highway is straight, without obstructions to the view, for several miles both north and south of the place where the accident occurred; an east and west gravel road intersects the highway at this place. Respondent went to Mandel's Crossing to keep an engagement to play cards with friends at a hotel which was located on the west side of the highway. It was necessary for her to cross the highway from east to west; the traffic was light at that time. Before starting across the highway she looked for the approaching traffic, and saw only one car which was coming from the south. Respondent saw no traffic coming from the north. After the northbound car passed she started to cross the highway. She heard no horn sound. She got across the concrete highway and had reached a point on the gravel seven or eight feet west of the concrete when she was hit by the automobile driven by appellant Wentz. He was driving south and had swerved off the highway and was on the highway shoulder. There was testimony to the effect that he was traveling between sixty-five and seventy miles per hour. Wentz testified that he ran off the highway to avoid striking respondent.

It is the contention of appellant Wentz that as there were no obstructions to the view, and the facts demonstrate that if respondent had looked for his approaching automobile she would have discovered it, therefor, under the Michigan law, respondent's right of recovery is barred on account of her contributory negligence, notwithstanding her testimony that she looked both ways and failed to discover the approaching automobile.

If respondent had been hit upon the pavement, she would have been guilty of contributory negligence as a matter of law. [See Molda v. Clark, 236 Mich. 277, 210 N. W. 203; Richardson v. Williams, 249 Mich. 350, 228 N. W. 766.]

However, respondent was not struck on the pavement but upon the east shoulder after she had already crossed the highway.

In Grant v. Richardson; 276 Mich. 151, 267 N. W. 605, 1. c. 607, the Supreme Court of Michigan said:

"We think that the plaintiff's decedent was free from contributory negligence. He was in a place where he had a right to be and 10 feet away from where he might expect an automobile or other vehicle to travel."

Again, in Donahue v. Gordon, 292 Mich. 581, 291 N. W. 14, 1. c. 15, that court said:

"There is, of course, no question of contributory negligence in this case on the part of the deceased. He was where he had a right to be, and was under no compulsion to expect that automobiles would come upon the sidewalk and strike him from behind."

So, in the case at bar, we think respondent sustained the burden in showing that she was not guilty of contributory negligence. She was 6 or 8 feet west of the highway pavement, a place she had a right to be and had no reason to expect that an automobile would leave the pavement and strike her. Assuming that she did not look north as she crossed the highway, that would not have contributed to her injury as she had already crossed the pavement and was at a place where she was under no compulsion to expect an automobile to travel.

We think the trial court properly overruled appellant Wentz's demurrer to the evidence.

Appellant Wentz next contends that Instruction No. 1 is erroneous. Briefly, the instruction requires the jury to find that respondent was using ordinary care for her own safety and that it submits negligence in swerving or driving the automobile off the highway at a time when respondent had crossed the highway and was walking on the shoulder at a place where appellant by ordinary care could have seen her. It then submitted that if the operation of the automobile under the circumstances as aforesaid was negligence, causing injury to respondent, she was entitled to recover.

Appellant contends that the instruction is too general and that it gave the jury "an almost unlimited scope" by requiring it to find "that the operation under the circumstances as aforesaid was negligence." We do not agree with appellant Wentz's contention. It covers the facts and respondent's theory of the case. It submits those facts in detail as to the time, place and movement of both litigants. It particularizes not only as to appellant's negligence in driving or swerving off the highway, but also as to respondent's position and movement during the occurrence. The instruction then submitted whether the "operation of the said automobile under the circumstance aforesaid was negligence." The words, "under the circumstance aforesaid," confined the jury to consideration "of specific

acts of negligence hypothesized." The instruction is not subject to appellant's objection. [Shannon v. People's Motorbus Co., 20 S. W. (2d) 580.]

■ Appellant Wentz contends that the verdict is excessive. At the time of her injury respondent was forty-four years old. She did her own housework and made from $10 to $15 a week as a dressmaker. Her loss of earning to date of trial was from $800 to $1000. The accident occurred about 1:30 P. M. and she was unconscious until about 7:00 or 8:00 P. M. She sustained a fracture of the skull, a severe concussion of the brain, and a triangular laceration of the scalp, exposing the skull and requiring ten or eleven stitches. There were numerous other lacerations and abrasion of the scalp, the jaw, right shoulder, back, left forearm, right thigh and left ankle. She stayed in the hospital six and one-half weeks, requiring constant attention to reduce her blood pressure and decrease the intracranial pressure. She was still suffering from headaches, dizzy spells during which she falls down. She was still under the care of Dr. Rosenbloom. It was his opinion that the skull fracture and severe concussion had caused the dizzy spells, on two occasions resulting in unconsciousness, which is the beginning of epilepsy. He found her to be mentally and emotionally unstable, and very unsteady in her movements.

We think the verdict is in line with the verdicts in the cases of Emerson v. Mound City, 26 S. W. (2d) 766; Keyes v. C., B. & Q. Railroad Co., 326 Mo. 236, 31 S. W. (2d) 50; and Pandjiris v. Oliver Cadillac Co., 339 Mo. 726, 98 S. W. (2d) 978, where the injuries were similar to the injuries in the case at bar. We rule that the verdict is not excessive.

From what we have said, it follows that the judgment as against appellant Wentz should be affirmed, but reversed as to appellant James Mulligan Printing and Publishing Company. It is so ordered. All concur.