The plaintiff used this check, and although there was a conflict of evidence as to whether the auto starter was really any part of the transaction on which the plaintiff sues, and the weight of evidence is wholly with the plaintiff, it is urged that this constitutes an accord and satisfaction. The learned court must have found from the evidence that the defendant purchased the motor at an agreed price of $400, independently of the auto starter. This being the obvious fact, there was no unliquidated claim existing between the parties. The defendant owed the plaintiff $400 under a contract. There was no dispute between them, and the check was not tendered as a payment in full upon a compromise of the controversy. The defendant elected to pay $267 on account of their contract, and they did not ask for a receipt in full, nor does their letter suggest definitely that they regard it as such a payment; and the fact that the plaintiff used the check, and within two days notified the defendants that they must pay the balance of the $400, indicates that there was never such a meeting of minds as is essential to an accord and satisfaction, nor was there any consideration to support the new contract which is involved in such a settlement. A superficial reading of Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695, and the case relied upon there, might seem to justify in some measure the defendant's position upon this appeal; but the limitations suggested in the later case of Eames Vacuum Brake Co. v. Prosser, 157 N. Y. 289, 299, 51 N. E. 986, completely destroy the authority of the earlier case as an authority for the defendant under the facts disclosed by the record, and the judgment appealed from should not be interfered with by this court.

The judgment appealed from should be affirmed, with costs. All concur.

---

## MULLER v. OAKES MFG. CO.

(Supreme Court, Appellate Division, Second Department. June 22, 1906.)

1. MASTER AND SERVANT—SAFE PLACE TO WORK—DUTY OF MASTER.

Where a boiler room opened into a yard by a door within six or seven feet of which was a tank filled with boiling water, and firemen had for some years made a practice of going outside and sitting by the tank to eat their lunch, and using a tub near it to wash their clothing, the master was chargeable with knowledge of the habits of the firemen, and was under obligation to use reasonable care to keep the tank in a safe condition, and avoid its bursting.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 179, 205.]

2. SAME—INJURIES TO SERVANT—SCOPE OF EMPLOYMENT.

Where a fireman was killed by the bursting of a hot water tank near which he was washing his overalls and jumper. he was when killed engaged in the line of his employment, so as to render the master liable if it was negligent in failing to keep the tank in good condition.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 153.]

Appeal from Trial Term, Queens County.

Action by Gertrude Muller, as administratrix of Henry Muller, deceased, against the Oakes Manufacturing Company. From a judg-

ment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before JENKS, HOOKER, RICH, MILLER, and GAYNOR, JJ.

Fred E. Fishel, for appellant.

Louis Hess (William Law Stout, on the brief), for respondent.

GAYNOR, J. In the manufacturing establishment of the defendant there was a boiler room with six boilers in use. The deceased was one of three firemen who kept up the fires under them. There was a door from the boiler room into the yard; it was only from 8 to 12 feet from the boilers. Outside of this door, about 6 or 7 feet from it, and alongside the building, was a large tank of water. It was in circulation with the boilers and the water was hot. The men in the engine room were in the habit of sitting on a bench set up against the building outside of the door, and a few feet from the tank, while eating their dinner daily in warm weather. The tank had a spigot with a tub under it, and the firemen were in the habit of washing their overalls and jumpers in this tub at least once a week. Their clothes got very dirty from coal dust and ashes, and also from the burning of exhausted logwood chips from the manufactury mixed with the coal for economy of fuel. This habit of going out by the tank to eat and wash had been of long continuance; there is testimony of it for three years, at least. While the deceased was washing his clothes at the tub the tank burst and he was scalded by the hot water from it and died therefrom. One or more of the iron hoops of the tank gave way from having become corroded and eaten thin by rust caused by water dripping down the sides of the tank from leaks and settling under the hoops. Witnesses on both sides testified to these facts, and none of them are seriously disputed.

It seems to me a thing unquestionable that it was the duty of the defendant to the deceased and his fellow workmen to use reasonable care to keep the tank safe from bursting. The door was there connecting the boiler room with the yard, and free to be opened and used by them, and for no other use, so far as appears. It was natural and proper and to be expected that they should step outside to eat their dinner or wash; and moreover it had so long been their custom to do so that it was to be presumed that the defendant knew of it. The deceased was doing work of his own at the tank when he was hurt, it is true, but it was work which workmen who work at such dirty employment customarily do. It would be too much to say that the master in such a case as this owes no duty to his servant except while he is in front of his furnace shoveling in fuel, or raking ashes and cinders. The law is not so hard a taskmaster as that, but humane and reasonable. Workmen in boiler rooms and dirty shops may step aside to a convenient place at hand in their working place, or so adjacent as to be of it or appurtenant to it, to eat or clean up, without getting outside the duty which their employer owes to them to take reasonable care of their safety.

The case of Muhlens v. Obermeyer, 83 App. Div. 88, 82 N. Y. Supp. 527, is closely in point. The case of Gibson v. Erie R. Co., 63 N. Y.

449, 20 Am. Rep. 552, is not applicable at all. There the conductor of a moving freight train was climbing up to the roof of a car on the side ladder when he was knocked off by the roof of the station. The trouble with his case was that he had no occasion to climb on the top of the cars and his doing so was in no way connected with his duties; he was entirely disconnected from his place and duties.

The judgment should be affirmed.

Judgment and order affirmed, with costs. All concur.