### FAMBORILLE v. ATLANTIC, GULF & PACIFIC CO.

(Supreme Court, Appellate Division, Third Department.   March 5, 1913.)

1. MASTER AND SERVANT (§ 114*)—MASTER'S LIABILITY—PLACES FOR WORK.

    A dredging company, having assumed the duty of transporting its servants from a canal bank to a dredge stationed in the center of the canal, was bound to use reasonable care in so doing, including the employment of a reasonably safe means of transportation.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 179, 200; Dec. Dig. § 114.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

    140 N.Y.S.—34

2. MASTER AND SERVANT (§ 185*)—MASTER'S LIABILITY—FELLOW SERVANTS.

The negligence of a coal passer on a dredge, contributing to overloading a scow which he had taken ashore to bring off other servants, by reason of which plaintiff's intestate was drowned, was the negligence of a fellow servant, and any negligence attributable to him in using the scow, instead of open boats, which were at hand, or in failing to pump out the scow, was the negligence of a servant in a detail of the work, for neither of which the master was liable, either under the common law or the Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

3. MASTER AND SERVANT (§ 279*)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—PERSON IN AUTHORITY.

Evidence in an action for the death of plaintiff's intestate while being taken to defendant's dredge, on which he was employed, held sufficient to sustain a finding that defendant's engineer was the man in authority at the time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

4. MASTER AND SERVANT (§ 279*)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—NEGLIGENCE OF PERSON IN AUTHORITY.

Evidence in an action for the death of plaintiff's intestate from the overturning of a scow, in which he was being taken to his work on defendant's dredge, held to warrant a finding that defendant's engineer, in authority at the time, was negligent in directing the overloading of the scow.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

5. MASTER AND SERVANT (§ 281*)—ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

Evidence in an action for the death of plaintiff's intestate from the overturning of a scow, in which he was being taken to his work on defendant's dredge, held to warrant a finding that the intestate was free from contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

6. APPEAL AND ERROR (§ 867*)—QUESTIONS OF FACT—VERDICT SET ASIDE.

Where a verdict for plaintiff is set aside as contrary to law, all questions of fact are deemed established in favor of the plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3476–3486; Dec. Dig. § 867.*]

7. MASTER AND SERVANT (§ 182*)—MASTER'S LIABILITY—PERSON INTRUSTED WITH SUPERINTENDENCE OR AUTHORITY—STATUTES.

Under Labor Law (Consol. Laws 1909, c. 31) § 200, subd. 2, as amended by Laws 1910, c. 352, so as to extend the master's liability to injuries or death occurring by reason of the negligence of any person in his service intrusted with any superintendence or authority to direct, control, or command any servant in the performance of such servant's duty, the master is liable for an injury to a servant caused by the negligence of a superintendent or any person intrusted with authority; the servant himself being free from contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

8. MASTER AND SERVANT (§ 88*)—MASTER'S LIABILITY—SCOPE OF EMPLOYMENT.

A deck hand on a dredge, whom the dredging company had assumed to carry to the dredge either by tug, scow, or open boat as an incident to the service in which he was engaged, while being so carried was in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the service of the company, making it the company's duty to exercise reasonable care to transport him safely.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 144–151; Dec. Dig. § 88.*]

Appeal from Trial Term, Saratoga County.

Action by Luigi Famborille, as administrator of Lorete Famborille, deceased, against the Atlantic, Gulf & Pacific Company. From an order setting aside a verdict for plaintiff and granting a new trial, plaintiff appeals. Reversed and verdict reinstated.

Argued before SMITH, P. J., and KELLOGG, LYON, and HOW-ARD, JJ.

Leary & Fullerton, of Saratoga Springs, for appellant.
Charles Irving Oliver, of Albany, for respondent.

LYON, J.   Plaintiff's intestate at the time of his death was a deck hand in the employ of the defendant on its dredge which was being used by defendant about one mile south of Ft. Ann in removing earth from the bottom of the Barge Canal. The dredge was stationed in the center of the canal, which at that point was about 100 feet wide and filled with water. Plaintiff's intestate was employed in the day shift, and commenced work at 8 o'clock in the morning. It was customary for the defendant to take its employés from Ft. Ann, where plaintiff's intestate resided, to the dredge on a steamtug, but, when that was not done, the men were accustomed to walk along either the east or west bank of the canal until opposite the dredge, when a boat was sent to take them over to it. It was also claimed by the defendant upon the trial that a third way in which the employés might reach the dredge was by walking upon a line of 20-inch round iron pipe, supported at intervals upon barrels, which at this time extended from the east bank of the canal to the dredge. As there was no rope above the pipe or other means by which a person walking upon the pipe could steady himself, and as this course was very infrequently used by any of the workmen, consideration of this method of reaching the dredge may well be eliminated. It had been customary for the defendant to place the men upon the dredge rather than to require any of them to furnish his own transportation from the bank to the dredge. When the steam-tug was out of commission, it was customary for any of the workmen who happened to be on the dredge to take a boat and go over to the bank and carry the men to the dredge, and that duty had not been delegated by the defendant to any one employé.

Upon the morning of October 31, 1911, defendant's steamtug, being disabled, did not run, and plaintiff's intestate, in company with one Kennedy, defendant's chief engineer, and seven other employés upon the dredge, walked down the west bank of the canal to a point opposite the dredge, when one Anastation, a coal passer, frequently referred to in the evidence as "the Greek," who was working in the night shift, seeing the men on the bank, without any instruction so to do, took a scow, which was frequently used for that purpose, and which was fastened on the west side of the dredge, and went across to the bank

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to take the men to the dredge. There were at the time two or three open flat-bottom boats, twelve to fourteen feet long, in good condition, each of which would carry five or six men, upon the opposite or easterly side of the dredge. This scow, which was made by the defendant's carpenter, was flat-bottomed, rectangular, fourteen feet long, five feet wide, eighteen inches deep, with the ends somewhat sloping, constructed of hemlock plank three inches thick on the sides and ends and two inches thick on the bottom, with a flat deck also two inches thick, supported by the sides of the boat. The seams in the deck, bottom, and sides of the scow were caulked and pitched, and it was nearly watertight, but required pumping out frequently, some of the witnesses testifying one or more times daily, for which purpose a hole had been bored through the deck, which was kept plugged when the pump was not being used. The scow, when pumped out and not loaded, drew from six to eight inches of water, and the deck was about ten inches above the water. Upon the morning referred to the deck was somewhat slippery from the rain of the preceding night, and there was more or less water in the scow; a witness for the plaintiff testifying that the boat before the workmen got on stood only about five inches out of the water, and that with the nine men on it stood only three inches out of the water, and that he could hear the water swash in the boat as it was pushed off. When the scow reached the bank, deceased was one of the first three persons to get on it. One of plaintiff's witnesses testified that, when six persons had got on the boat, Scacci, one of the two men still on the bank, objected to getting on, whereupon Anastation said, "Don't be afraid," and Kennedy, who was standing with his foot on the rope attached to the boat, preventing it from moving out, said, "All right, come on, don't be afraid." Thereupon Scacci stepped on. Then Angelo, the remaining man upon the shore, objected to getting on, whereupon Kennedy said, "Get right on, do not be afraid, the boat will not sink," whereupon Angelo got on, the men passing sufficiently forward to give the boatman an opportunity to place the oar, by which the scow was sculled, in its place upon the shore end of the boat and also space in which to operate the oar. Kennedy then stepped on the boat, making nine persons thereon, and it was pushed off, either by Kennedy with his foot, as he testified, or by Anastation by placing his oar against the bank, as another witness testified, and with sufficient force to carry it 10 or 15 feet. While going that distance the forward end of the boat dipped 2 or 3 inches under the water, whereupon the persons on that end of the boat shifted their positions quickly to the shore end of the boat, which settled and slid out from under the men, precipitating them all into the water, which at that place was 10 to 15 feet deep. Relieved of its load, the boat immediately arose, righted itself, and floated. Plaintiff's intestate and Anastation, the boatman, were drowned. That the scow had water in it at the time it was taken from the dredge to the bank seems to have been firmly established by the evidence. A witness testified that, when the shore end of the boat settled, he could hear the water in the boat rush to that end. Two witnesses testified to having seen it pumped out immediately after the accident. Other witnesses testified that the scow

had been in constant use, and that, when there was no water in it, 10 to 12 men and even heavier loads had been safely carried on it, and that, as before stated, when pumped out and free from load, the deck stood 5 inches higher than on the morning of the accident.

Three questions were submitted to the jury:

(1) As to whether the boat furnished to convey plaintiff's intestate from the bank to the dredge was reasonably safe for that purpose.

(2) As to whether Kennedy had authority to direct the men to get on the boat, and, if so, whether he gave orders which induced the overcrowding and sinking of the boat.

(3) As to whether deceased was free from contributory negligence.

No exception whatever was taken by either party to any portion of the charge, and there are no exceptions in the case requiring consideration other than that taken at the close of the evidence to the refusal of the court to grant a nonsuit.

At the request of the defendant, the court further charged the jury that the master did not guarantee the safety of its employés, and was not bound to furnish an absolutely safe place to work, and was only bound to exercise reasonable care and prudence in furnishing a safe place to work; that a master is not liable when one of his employés, without authority express or implied, assumes to direct another employé to work in a place which may be unsafe; that the negligent act must be one pertaining to superintendence, and that there is no liability when the act is the subject of performance by one of any subordinate employés, and includes no element of superintendence; that if one employé is injured through the negligence of another employé, so that the fellow servant rule comes in, the master is not liable to A. if another employé of the same grade, namely B., is negligent; he is only liable when the employé is of such standing in his service that he really is the master for that work, and, when such man is negligent, then the employé may recover from the master; and that if there was any danger and that danger was perfectly obvious and apparent to the deceased, and the jury find it was known to him, that it is then deemed to have been assumed by him. The court submitted the case to the jury upon the theory that the overloading of the scow, which caused its sinking and the drowning of the deceased, was due to the order of Kennedy, for whose negligence the defendant was responsible. The jury rendered a verdict for plaintiff of $2,500. The court thereupon, upon the application of defendant, granted an order setting aside the verdict and granting a new trial "upon the exceptions taken by the defendant upon the trial herein, and upon the ground that the said verdict is contrary to law." From such order this appeal has been taken.

The court based its action in setting aside the verdict upon the ground that, even if Kennedy could be held to have been the defendant's superintendent, the act or omission complained of, in order to make the defendant liable, must have occurred in the course of the performance of the master's service whereas Kennedy, like deceased, was a mere passenger upon the scow, being carried to his work, and was not engaged by the defendant to superintend or to do any serv-

ice whatever in relation to the scow in question, and had no authority to direct employés to embark thereon.

[1] The action was brought under the provisions of the Labor Law (Consol. Laws 1909, c. 31) relating to employer's liability for injuries. The defendant having assumed the duty of transporting the laborers to the dredge became bound to the use of reasonable care in so doing, and this contemplated the employment of a reasonably safe means of transportation. For this purpose in part the defendant had provided in addition to the steamtug, the scow and the open boats, and a pump as the means of freeing the scow of water. There is no evidence that any defect whatever existed in any of them. Under the proof, the disaster occurred by reason of overloading the scow, coupled with the impetus given it as it left the bank. The water in the scow did not render it defective, but simply lessened its carrying capacity when dry by the weight of the water in the boat.

[2] The negligence of Anastation so far as it contributed to overloading the scow was the negligence of a fellow servant, and any negligence attributable to him in using the scow instead of one or both of the open boats, or neglect to free it of water, was the negligence of a servant in a detail of the work. For neither of these would the master be liable, either under the common law or the Employers' Liability Act. Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905; Dair v. New York & Porto Rico Steamship Co., 204 N. Y. 341, 97 N. E. 711, 40 L. R. A. (N. S.) 918; Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725; McConnell v. Morse Iron Works & Dry Dock Co., 187 N. Y. 341, 80 N. E. 190, 10 L. R. A. (N. S.) 419, 10 Ann. Cas. 205; Quinlan v. Lackawanna Steel Co., 191 N. Y. 329, 84 N. E. 73.

[3-5] However, a very different question arises as to the liability of the defendant for any negligent act of Kennedy resulting in the death of plaintiff's intestate. Kennedy was defendant's chief engineer, and had been in its employ for upwards of four years. He had charge of the machinery of the dredge, and gave orders relating thereto. Witnesses testified that under him were the engineers, levermen, oilers, and coal passers. O'Connor, an oiler, testified that Kennedy was defendant's superintendent. Witness Scacci, a deck hand, designated him as the "big boss." Kennedy himself testified regarding his authority:

"When the captain was away, there was nobody that was superior to me in my department. There was not in any department. When the captain was there in charge, he was not superior to me in my department. He did not have anything to do with the other department. There was no man that I would take orders from when the captain was not there. These deck hands had worked for me at times, had assisted in making repairs in different ways. I would not tell them when I wanted a particular work done, the things they had to do. If I wanted anything done, I would not give a deck hand an order. Did not have to do that. When I wanted to have any work done, I supervised the work, how it should be done. Covering all the details of the work."

Carlson, the captain, had not come that morning at the time Kennedy and the men went upon the scow, but came along the bank soon after the accident occurred. Kennedy was therefore at the time of the

accident concededly in charge of the plant and of all the men in the employ of the defendant, and the jury was warranted in finding that he was the man in authority at that time.   The jury was also warranted in finding that Kennedy was negligent in directing the overloading of the boat, three of the nine men being Kennedy, and two men, Anastation and O'Connor, who were directly subject to his orders when at work on the dredge; also in finding that the act of Kennedy in pushing the scow with such force as to carry it 10 feet from the bank, causing it to dip water at the forward end, naturally occasioning the shifting of the men to the rear end of the boat, was a negligent act.   The jury was also authorized in finding that plaintiff's intestate was free from contributory negligence.

[6] The verdict having been set aside as contrary to law, all questions of fact are deemed established in favor of plaintiff, and the single question for determination upon this appeal is whether the defendant is legally liable for such negligent acts of Kennedy.

[7] Prior to the passage of chapter 352, Laws of 1910, amending the Labor Law (chapter 36, Laws of 1909), it was required in order to render the master liable for the negligent act of a superintendent that he be at the time of the commission of such act actually exercising superintendence.   By such amendment this requirement was omitted, and subdivision 2, § 200, of the Labor Law, as so amended, extended the liability of the master to injury or death occurring by reason of the negligence of any person in the service of the employer intrusted with any superintendence, or by reason of the negligence of any person intrusted with authority to direct, control, or command any employé in the performance of the duty of such employé.   The wording of the amendatory act is not vague or indefinite.   It is stated in the report of the commission established by chapter 518, Laws of 1909, entitled, "An act to establish a commission to inquire into the question of employers' liability," etc., as follows:

"We are, however, clearly of the opinion that in all trades the master should be responsible for the acts of any person who has in any degree power of superintendence over other servants, under the doctrine of respondeat superior.   Under the law of the state of New York as it now stands, as shown, for instance in Quinlan v. Lackawanna Steel Company, 191 N. Y. 329, 84 N. E. 73, Foster v. International Paper Co., 183 N. Y. 45, 75 N. E. 933, Vogel v. Am. Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725, and others, and under the exact language of subdivision 2 of section 200 of the Employers' Liability Act, as it now stands, the employer is only responsible when the superintendent is actually exercising superintendence.   We think that distinction is too limited, and that the employer should be responsible for all accidents caused by any person intrusted with any authority, * * * and we think to that extent at least the fellow servant rule should be modified, and so recommend. * * *  In the federal law, the fellow servant defense has been abrogated entirely. * * *  In the recommendations proposed for the amendment of this act, shown, for instance, in the bills introduced at successive sessions for this purpose, looking t. .;ard amending this section, there has been contained an express declaration of the legal principle that superintendents should be regarded as vice principals, and not fellow servants.   We do not regard that language as essential to accomplish the result above outlined."

The Legislature of 1910, to which this report of the commission was made, evidently adopted the views of the commission, as the

Legislature thereupon enacted chapter 352 which followed the precise wording of the act proposed by said commission in its report.

It must be held, therefore, that under the amendment of 1910 the master is liable for an injury to a servant caused by the negligence of a superintendent or any person intrusted with authority; the servant himself being free from contributory negligence.

[8] But the defendant contends that plaintiff's intestate was not in the service of the defendant at the time he met his death, but was simply on his way to his work, and hence was not within the protection of the statute. As before stated, the master had assumed to transport plaintiff's intestate and the other workmen to the dredge by steamtug from Ft. Ann when the tug was in commission, and when not, by this scow or an open boat from the bank to the dredge. Such action by defendant was in the line of its duty, and was a necessary incident to the employment of deceased and to the service which he was to perform and connected with it. Vick v. N. Y. C. & H. R. R. R. Co., 95 N. Y. 267, 47 Am. Rep. 36; McDonald v. Simpson-Crawford Co., 114 App. Div. 859, 100 N. Y. Supp. 269; McGuirk v. Shattuck, 160 Mass. 45, 35 N. E. 110, 39 Am. St. Rep. 454. Hence while being transported by the defendant from the bank to the dredge deceased must be regarded as having been in the service of the defendant, and the defendant obligated to the exercise of reasonable care in transporting him safely.

Plaintiff's intestate having met his death while an employé of the defendant by reason of the negligent acts of defendant's superintendent while both were engaged in the master's service, the jury having found that the deceased was free from contributory negligence, the plaintiff was entitled to recover.

The order setting aside the verdict and granting a new trial should be reversed, and the verdict reinstated. All concur.