McKEON v. MANZE et al.

(Supreme Court, Special Term, Erie County. March 7, 1916.)

1. MASTER AND SERVANT ⬤➾301—ASSAULT BY SERVANT—EXISTENCE OF RELATION.

Though the hours of services of one employed by a saloon proprietor to serve free lunches were over, and he had gone behind the bar to wash, the relation of master and servant existed between him and the proprietor, when he at such time threw a glass, which hit a patron.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1210–1216; Dec. Dig. ⬤➾301.]

2. MASTER AND SERVANT ⬤➾302—ASSAULT BY SERVANT—LIABILITY OF MASTER.

Even though the proprietor of a saloon and connected hotel did not sustain the relation of innkeeper to one in the saloon for drinks, he is liable for injury to such a patron from the throwing of a glass by his servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221, 1225, 1229; Dec. Dig. ⬤➾302.]

Appeal from City Court of Buffalo.

Action by Robert McKeon against Thomas Manze and another. From a judgment of the City Court of Buffalo for plaintiff, defendants appeal. Affirmed.

William P. Colgan, of Buffalo, for appellants.
Harold J. Tillou, of Buffalo, for respondent.

WHEELER, J. The evidence shows that the defendant Manze is the proprietor of a saloon at No. 133 Main street in the city of Buffalo, and in connection with the saloon runs a sort of hotel or lodging house for the accommodation of guests. These rooms are in the building above the saloon proper. In connection with the saloon the proprietor had a lunch counter, where lunches were served without charge to those

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

buying drinks at the bar. The proprietor employed a barkeeper to serve drinks, and Taft, the codefendant with the proprietor, was in charge of the lunch counter. Serving free lunches was discontinued shortly after 6 o'clock each evening, but Taft on occasions would help out the barkeeper when he happened to be away or sick. Taft lived at the hotel and occupied a room over the saloon.

On the night the plaintiff, McKeon, was injured in this saloon, he visited the place for the purpose of getting a beer, and was conducting himself in a proper and orderly manner. It appears that the lunch counter had been closed, and that Taft, who had it in charge, had gone above to wash up and change his clothes; that others were using those accommodations, and Taft returned to the saloon below and went behind the bar to wash. In the saloon at the time near the bar was a frequenter called "Happy," who engaged in some altercation or words with Taft. "Happy" addressed to Taft some vile name, whereupon Taft threw at "Happy" a beer glass; but, his aim being poor, the glass struck the plaintiff near the eye, inflicting a bad cut, and knocking him unconscious. The only serious conflict in the evidence seems to be over this occurrence; Taft claiming that he did not hurl the glass, but that "Happy" threw it, and in fending off the attack with a glass held in his own hand a piece of broken glass flew and struck the plaintiff. As the court below rendered a verdict for the plaintiff, we must assume that the presiding judge rejected this claim on the part of the defense and found the glass was in fact thrown by Taft. It is conceded the proprietor, Manze, was not present at the time, and knew nothing of the affair until it was all over.

[1] There can therefore be no question as to the liability of the defendant Taft. As to the defendant Manze, however, it is contended that under the circumstances he is not legally liable for the acts of Taft; that Taft was not at the time his employé, or engaged in the discharge of any duties incident to his employment; that his duties at the lunch counter had ended for the day; and that the consequences of any assault which Taft committed cannot be visited on Manze, and Taft alone is responsible for the results.

Manze in fact ran a cheap hotel with a saloon attachment, and in our opinion the duties and liabilities of an innkeeper should largely govern and control in the disposition of this case. Taft was employed by him in running the place. He lived at the hotel, and we may fairly assume that his room and board, in the absence of anything appearing to the contrary, was part of the consideration for his services, so that it cannot be said that, when his duties behind the lunch counter ended, he ceased to be an employé and for the rest of the day sustained only the relation of a guest. He evidently had the run of the place, like other employés, and while there was subject to the general directions and control of the proprietor, like any other servant or employé, and we think the proprietor under the circumstances such as are disclosed by the evidence in this case became legally responsible for the acts of Taft resulting in injury to the plaintiff, lawfully in the place and entitled to the rights and protection incident to the situation.

It may be said generally that the relation of servant and master does not begin or terminate necessarily the instant the particular duties the servant has to perform begins or ends. There is a long line of cases holding this general doctrine. An employé has been held still an employé while taking time off for his meals, while still on railroad premises. United States v. Chicago, etc., R. R. Co. (D. C.) 197 Fed. 624. One going to work upon the defendant's premises has been held a servant. Boldt v. N. Y. Central R. R. Co., 18 N. Y. 432. One riding on a pass to and from his work has been held a servant. Vick v. N. Y. Central R. R. Co., 95 N. Y. 267, 47 Am. Rep. 36. To the same effect are the cases of Russell v. Railroad, 17 N. Y. 134, and Vroom v. N. Y. Central R. R. Co., 129 App. Div. 858, 115 N. Y. Supp. 1063, affirmed in 197 N. Y. 588, 91 N. E. 1121. In McDonald v. Simpson, 114 App. Div. 859, 100 N. Y. Supp. 269, it was held:

"The fact that actual working hours were over, and the saleswoman was going to the top floor to resume her street clothes, did not end the relation of master and servant."

In N. C. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, an employé was injured while crossing a railroad yard of his employer to dinner, and it was held that the relation of master and servant still existed, although he was going to his own dinner, off the railroad premises. In Muller v. Oakes, etc., Co., 113 App. Div. 689, 99 N. Y. Supp. 923, a fireman was engaged in washing his overalls at a tank, and it was held that, though the fireman was washing his own clothes, he was not outside the scope of his own employment. See also Muhlens v. Obermeyer, 83 App. Div. 88, 82 N. Y. Supp. 527; Famborille v. Atlantic Gulf & Pacific R. R., 155 App. Div. 833, 140 N. Y. Supp. 529, affirmed in 213 N. Y. 666, 107 N. E. 1077.

In the case at bar it will be noted Taft testified he went behind the bar, just prior to the assault, for the purpose of washing up. We therefore conclude that at the time the plaintiff was struck Taft must be deemed to have been the servant of Manze, the proprietor of the saloon and hotel.

[2] This being the case, did the proprietor become legally responsible for Taft's act in throwing the glass at "Happy" and hitting the plaintiff? Manze's hotel, although of an inferior sort, was a place where he furnished food and lodging to the public, and was still a hotel within the meaning of the law. He owed the duty to those who patronized his place to see to it that they were not injured by any want of care on his part or that of his servants. This duty extends even to seeing that reasonable care is exercised that guests are not injured by other guests. Rommel v. Schambacher, 120 Pa. 579, 11 Atl. 779, 6 Am. St. Rep. 732. The rule must certainly extend to injuries done by servants and employés of the place.

A leading case in this state on the subject is that of De Wolf v. Ford, 119 App. Div. 813, 104 N. Y. Supp. 876, reversed in 193 N. Y. 406, 86 N. E. 527, 21 L. R. A. (N. S.) 860, 127 Am. St. Rep. 969.

Mr. Justice McLaughlin wrote a dissenting opinion when that case was decided by the Appellate Division, in which he said:

"The rule to be applied to innkeepers, so far as treatment of a guest is concerned, is analogous to one applied to common carriers. * * * This liability is put upon the ground that such acts constitute a breach of its contract, which obligates it, not only to transport a passenger, but accord to him respectful and courteous treatment and protect nim from insults from strangers and its own employés."

This dissenting opinion became the law of the case upon appeal to the Court of Appeals, reversing the judgment below, and where the court among other things said:

"There is a dictum in the opinion (referring to 8 Coke's Rep., 63) to the effect that, if the guest be beaten in the inn, the innkeeper shall not answer for it; but under no reasonable construction could that language be held to mean that an innkeeper *and his servants* might assault a guest and yet not be liable. There may doubtless be many conditions under which a guest at an inn may be assaulted or insulted by another guest, or by an outsider without subjecting the innkeeper to liability; but if it ever was thought to be the law that an *innkeeper or his servants* have a right to willfully assault, abuse, or maltreat a guest, we think the time has arrived when it may very properly and safely be changed to accord with a more modern conception of the relation of innkeeper and guest."

See also Aaron v. Ward, 203 N. Y. 355, 96 N. E. 736, 38 L. R. A. (N. S.) 204.

If we should, however, in this case hold that, as to those patronizing the saloon of Manze for the purpose of obtaining drinks, he did not sustain toward them the technical relation of an innkeeper, nevertheless, as we understand the law, substantially the same duties and obligations exist as to such persons. The same rules apply quite generally to places which the public are invited to patronize. Swinarton v. Le Boutillier, 7 Misc. Rep. 639, 28 N. Y. Supp. 53, affirmed in 148 N. Y. 752, 43 N. E. 990; Mallach v. Ridley, 47 Hun, 638, 9 N. Y. Supp. 922;[1] Blaisdell v. Long Island R. R. Co., 152 App. Div. 218, 136 N. Y. Supp. 768.

We therefore conclude the judgment of the City Court should be affirmed as to both defendants, with costs of this appeal. So ordered.

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 47 Hun, 638.